Dear Mr. Manning:
You have requested an opinion of the Attorney General in your capacity as General Counsel to the Louisiana Department of Economic Development (DED). You ask our interpretation of the laws comprising the Industrial Tax Equalization Program (Program) found at R.S. 47:3201, et seq. The Program was created for the purpose of attracting new industries to Louisiana by providing a procedure whereby the total state and local taxes imposed upon these industries can be reduced to levels equivalent to those of competing states.
Your specific question is whether a company which has already been granted a contract under the Program for a ten year period can apply for a second contract granting additional tax incentives for the same business establishment. Thus, for example, a company with business headquarters in Massachusetts constructs a new manufacturing plant in Shreveport in 1988. In connection therewith, the company entered into an Industrial Tax Equalization Contract (Contract) with the Louisiana Board of Commerce and Industry (LBCI) pursuant to R.S. 47:3201, et seq. In accordance with state law, the contract was entered into for an initial term of five years and was renewed for an additional five year period. In 1998, the same company offers to move its business headquarters from Massachusetts to Shreveport, in addition to maintaining its existing manufacturing facility. In return, it requests a new company-wide Contract for, not only the new headquarters, but also the currently existing manufacturing plant. Thus, the question: Can a second Contract be entered intobetween the company and LBCI affording additional tax incentivesto the manufacturing facility? In answer to your question, we refer you to the laws that implement the Program. Section 3201 provides, in pertinent part, as follows:
 "It is the purpose of this Chapter to encourage the establishment of new manufacturing establishments, new headquarters, or new warehousing and distribution establishments in Louisiana by providing a procedure whereby the total state and local taxes imposed upon such establishments may be reduced, after all other tax incentives for specific sites are applied, to the levels imposed by other states." [Emphasis added.]
Section 3202 enumerates the requirements that must be met by the business desiring to locate in Louisiana. A lengthy enumeration and discussion of these requirements are pretermitted. Suffice it to say, Section 3202 clearly limits the exemption from taxation to new manufacturing establishments, new headquarters and/or new warehousing and distribution establishments.
Section 3203 provides for the process of reviewing an application for exemption by the DED, the LBCI, the Board of Tax Appeals (Board) and the Department of Revenue and Taxation (Department), with final recommendation from the Governor.
Section 3204 provides with respect to the Contract, in pertinent part, as follows:
 "A. Whenever the governor finds that a new manufacturing establishment, new headquarters, or new warehousing and distribution establishment satisfies the requirements of this Chapter, he shall advise the Board of Commerce and Industry, that it may enter into a contract with such establishment exempting it from taxation as provided in this Section.
 * * * C. Each contract of exemption entered into under authority of this Chapter shall be reviewed and reevaluated, and shall be subject to renegotiation, five years from the date of the execution of the contract and may be renewed for an additional five year period, provided that the total number of years of exemption shall not exceed ten years." [Emphasis added.]
Section 3205 provides with respect to the promulgation of rules and regulations as follows:
 "The Department of Economic Development may make and promulgate such rules and regulations consistent with the provisions of this Chapter, as are necessary to carry out the provisions of this Chapter."
We have been provided with a copy of the rules and regulations promulgated by DED with regard to the Program. In general, they parallel the statutory provisions set forth hereinabove. A review of the statutes and the rules and regulations interpretive thereof, clearly evidence the following:
 1. The tax incentives under the Program are intended for new manufacturing establishments, new corporate headquarters and/or new
warehousing and distribution establishments.
 2. Each contract of exemption entered into for a new facility is subject to renegotiation five years from the date of its execution, and may be renewed for an additional five year period. In any event, the total number of years of exemption shall not exceed ten.
In applying the above provisions to the issue at hand, we are guided by the following rules of statutory construction:
 "LSA-C.C. art. 9. Clear and unambiguous law
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
 LSA-C.C. art 10. Language susceptible of different meanings
 When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.
 R.S. 1:3. Words and phrases; how construed
 Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language . . . ."
Applying these rules of statutory construction and interpretation, we are of the opinion that the Program provides limited tax incentives and/or exemptions to new industries, whether they be manufacturing establishments, corporate headquarters or warehousing and distribution facilities. The incentives awarded to a new establishment may not exceed ten years.
Going back to our example, the company's manufacturing establishment in Shreveport is no longer new, having already exhausted its maximum ten year tax incentive. Assuming the company moves its corporate headquarters to Shreveport, the company could apply, and might well qualify for tax incentives under the Program. However, these incentives would be limited to the corporate headquarters.
It would appear that the statutory provisions, in question, are free from ambiguity. Assuming, arguendo, that an ambiguity exists, the doctrine of contemporaneous construction must be considered. Under the doctrine, when the meaning of a statute is in doubt, the interpretation by those charged with its enforcement will be given substantial weight. Esso Standard OilCo. v. Crescent River Port Pilot's Association, 106 So.2d 316,235 La. 937 (La. 1958).
In this regard, we have been advised by your legal division that neither DED nor the LBCI has ever interpreted the statutory provisions in question, or the rules interpretive thereof, to authorize the execution of a Program Contract or Contracts which grant tax incentives to the same establishment in excess of ten years.
Accordingly, it is the opinion of this office that a manufacturing establishment which has been located in Louisiana and has been receiving tax incentives for the past ten years, may not be granted additional tax incentives under a new contract for that same establishment.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/cla